IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Inga Lashon Smith, | ) | Civil Action No.  8:13-cv-03139-TMC-JDA |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local

Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[1]  Plaintiff brought this

action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final

decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's

claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2]

For the reasons set forth below, it is recommended that the decision of the Commissioner

be affirmed.

**PROCEDURAL HISTORY**

In May 2010, Plaintiff filed applications for DIB and SSI, alleging an onset of

disability date of August 5, 2008.  [R. 91–99.]  The claims were denied initially and on

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2] Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).

reconsideration by the Social Security Administration ("the Administration").  [R. 58–67, 71–77].  Plaintiff requested a hearing before an administrative law judge ("ALJ"), and on April 9, 2012, ALJ John Lamb conducted a de novo hearing on Plaintiff's claims.  [R. 33–57.]

The ALJ issued a decision on May 18, 2012, finding Plaintiff not disabled. [R. 15–32.] At Step 1,[3] the ALJ found Plaintiff met the insured status requirements of the Social Security Act ("the Act") through December 31, 2013, and had not engaged in substantial gainful activity since August 5, 2008, the alleged onset date.  [R. 17, Findings 1 & 2.]  At Step 2, the ALJ found Plaintiff had the following severe impairments: mild degenerative disc disease of the cervical and lumbar spine with radicular symptoms, fibromyalgia, and obesity.  [R. 17, Finding 3.]  At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. 20, Finding 4.] The ALJ specifically considered Listing 1.04 and also considered the effects of Plaintiff's obesity under SSR 02-01p and Sections 1.00Q and 3.00I of the listing of impairments.  [R. 20–22.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). I specifically find that the claimant can lift and/or carry 10 pounds occasionally and 5 pounds frequently; stand

_____

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

> or walk, with normal breaks, for a total of 2 hours in an 8 hour workday; and sit, with normal breaks, for a total of 6 hours in an 8 hour workday. The claimant can occasionally bend, stoop, crawl, crouch, or balance. She can never climb ladders, ropes, or scaffolds. She is further limited to frequent overhead reaching.

[R. 22, Finding 5.] Based on this RFC, the ALJ determined at Step 4 that Plaintiff could not perform her past relevant work as a bakery food sales clerk, a dietary aide, or a final inspector [R. 25, Finding 6]; but, based on her age, education, work experience, RFC, and the testimony of a vocational expert ("VE"), there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. [R. 25, Finding 10]. On this basis, the ALJ found Plaintiff had not been under a disability as defined by the Act from August 5, 2008, through the date of the decision. [R. 26, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision [R. 8–11], but the Council declined review [R. 1–7]. Plaintiff filed this action for judicial review on November 19, 2013. [Doc. 1.]

### THE PARTIES' POSITIONS

Plaintiff argues the ALJ's decision is not supported by substantial evidence and should be remanded because

1. the ALJ improperly gave little weight to the medical opinions of Plaintiff's treating neurologist, Dr. Robbie Buechler ("Dr. Buechler"), which supported a finding of disability [Doc. 14 at 23–32]; and

2. the ALJ failed to perform and document the required PRTF analysis with respect to Plaintiff's mental impairment [*id.* at 33–34].

The Commissioner contends the final decision is supported by substantial evidence, specifically arguing:

1. the ALJ properly considered Dr. Buechler's opinion [Doc. 15 at 15–23]; and

3

2    there was insufficient evidence that Plaintiff suffered from a mental impairment to trigger the ALJ's duty to use the Psychiatric Review Technique at Step Two of the sequential evaluation [*id.* at 23–30].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to

4

determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand

5

was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the

6

claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Ashton v. Astrue*, No. 6:10-cv-152, 2010 WL 5478646, at *8 (D.S.C. Nov. 23, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can

find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575, 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* §§ 404.1521, 416.921.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule,

9

the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

**C.    *Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

**D.    *Past Relevant Work***

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[5] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. §§ 404.1560(b), 416.960(b).

**E.    *Other Work***

---

[5]Residual functional capacity is "the most [a claimant] can do despite [his] limitations." 20 C.F.R. §§ 404.1545(e), 416.945(a)(1).

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[6] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which

---

[6]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a; 416.969a. A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. *Id.*

exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

The opinion of a claimant's treating physician must "be given great weight and may be disregarded only if there is persuasive contradictory evidence" in the record.  *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir. 1986) (holding that a treating physician's testimony is entitled to great weight because it reflects an expert judgment based on a continuing observation of the patient's

condition over a prolonged period of time); *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983)). If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence. *Craig*, 76 F.3d at 590. Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See id.* (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d), 416.927(d). In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell*, 699 F.2d at 187 (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a

13

continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).   An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir.1986).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.   20 C.F.R. §§ 404.1527(e), 416.927(e).   However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).   The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. §§ 404.1517, 416.917.   Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing

the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the Fourth Circuit's "pain rule," it is well established that "subjective complaints of pain and physical discomfort can give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs."  *Coffman*, 829 F.2d at 518.   The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. §§ 404.1528, 416.928.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject

of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).

The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

16

## VI.  Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).  Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

### Treating Physician's Opinion

Plaintiff argues the ALJ failed to explain what in Dr. Buechler's conclusions the ALJ found to be inconsistent with treatment records and other substantial evidence of record. [Doc. 14 at 26.]  Further, Plaintiff argues the ALJ improperly rejected Dr. Buechler's opinion based on other evidence of record that did not provide the necessary support to reject the opinion.  [*Id.* at 28–32.]  The Commissioner, on the other hand, contends substantial evidence supports the ALJ's evaluation of Dr. Buechler's opinion and the ALJ's finding that the portion of Dr. Buechler's opinion on work limitations was inconsistent with the medical evidence.  [Doc. 15 at 15–23.]

17

The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). ALJs typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (quoting *Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. § 404.1527(c).

The opinion of a treating physician is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Additionally, Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996). However, not every opinion offered by a treating

18

source is entitled to deference:

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions.  In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work.  Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner.  Such opinions on these issues must not be disregarded.  However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); see also 20 C.F.R. §§ 404.1527(e),

416.927(e) (stating an ALJ does not have to "give any special significance to the source

of an opinion on issues reserved to the Commissioner," such as an opinion that the

claimant is disabled, the claimant's impairment or impairments meets or equals a listing,

or the claimant has a certain residual functional capacity).

### Summary of Dr. Buechler's January 2011 Opinion

On January 5, 2011, Dr. Buechler provided a "narrative summary," including

answers to questions apparently requested by Plaintiff's counsel.  [R. 269–70.]  Dr.

Buechler indicated be started seeing Plaintiff in March 2010 after she had been

experiencing, for about two years, left lateral dysaesthesia and numbness on and off to the

side of her leg and the bottom of her foot, with cold achiness in the back.  [R. 269.]  Dr.

Buechler noted Plaintiff came with an MRI showing facet changes at L4-5 with some other

cystic changes in this area; a nerve study which showed a subacute to chronic lumbosacral

radiculopathy maximal at L5 without evidence of neck issues; and a previous diagnosis of

"sciatica."   [Id.]   Dr. Buechler noted Plaintiff indicated she had been told she had

degenerative disc disease at C5 eight years ago or longer. [*Id.*] On exam, Dr. Buechler noted Plaintiff appeared to have an L5 radiculopathy, which was later confirmed with a nerve study. [*Id.*] Dr. Buechler indicated that he had last seen Plaintiff on September 24, 2010 and, at the time, had diagnosed her with cervical stenosis without significant radiculopathy symptoms; with L5 radiculopathy and stenosis; and with pain syndrome, possibly fibromyalgia, with diffuse pain in four quadrants all over, possibly worsened by a car accident. [*Id.*] Dr. Beuchler found that, overall, Plaintiff had a lot of give-out weakness and functional weakness that may have been pain related; however, he could not substantiate whether full effort was given or not. [R. 270.]

In response to questions presented by Plaintiff's counsel, Dr. Buechler responded as follows:

Q. In an 8 hour 5 day week basis could she engage in anything more than sedentary work as defined in the questionnaire?

A. At the last point that I saw the patient and with her history of the past two years she probably would not be able to do more than light duty including carrying light objects, she would likely have significant limitations to sitting in one spot at a time as detailed in the questions below.

Q. If she could work that amount of time would she probably have to rest from the workstation for significantly more than hour during the work week?

A. Likely this is true as she usually cannot find a comfortable position and at times the medications make her sleepy and if she does not take them she is quite uncomfortable and the rest periods would likely be unpredictable.

Q. If she attempted this would she probably miss more than three days of work per month?

A. Likely yes and some days she could not even get out of bed.

Q. If she attempted this is it probable that she would have problems with attention and concentration interrupting her tasks?

A.     This I cannot answer.  I did not significantly focus on this during her testing, however, some of the medications she takes certainly could reduce her attention.

[R. 270.]

### *The ALJ's Treatment of Medical Opinions*

In assessing Plaintiff's RFC, the ALJ described his consideration of Dr. Buechler's

January 2011 opinion as follows:

> While I have attributed some weight [t]o Dr. Buechler's opinion, I note that some of his conclusions are inconsistent with treatment record and the other substantial evidence of record. Specifically, Dr. Buechler concluded that the claimant would be likely that the claimant would have to rest from the workstation for significantly more than an hour during the workweek and would also likely miss more than 3 days of work a month due to her impairments (Exhibit 13F).  However, there is no indication in the record that the claimant's impairments would cause these limitations.  As noted above, diagnostic evidence reveals only mild degenerative changes in her spine.  The most recent x-rays of the claimant's cervical spine dated February 12, 2012, reveal only mild degenerative disc changes (Exhibit 26F).  In addition, Dr. Trott found no objective evidence of an impairment to the upper left extremity and no degree of impairment.  He concluded that there is no medical justification for further work restrictions to the left upper extremity (Exhibit 2F).  Likewise, treating physician Melinda Moretz, M.D., noted that the claimant's pain was muscular in origin as there was no evidence of nerve compression or disc abnormalities (Exhibit 5F, Page 3).  Dr. Beuchler even noted improvement in the claimant's condition.  On November 11,2011, Dr. Beuchler noted that the claimant's fibromyalgia was doing quite well.  He noted that her lumbosacral radiculopathy and stenosis have much improved.  Her pain has decreased from 6 down to between 2 and 4 on a pain scale of 1 to 10.  Her cervical radiculopathy is also much better (Exhibit 17F).  In conclusion, I find this portion of Dr. Beuchler's opinion to be inconsistent with the weight of the medical evidence.

[R. 24–25.]

With respect to the other medical evidence of record, the ALJ noted:

21

An MRI of the claimant's cervical spine dated June 30, 2008, revealed mild left paracentral C5-6 bulging but no cord or foraminal encroachment (Exhibit 1F, Page 2). X-rays of the lumbar spine dated March 20, 2009, were negative with the exception of possible mild scoliosis (Exhibit 4F, page 12). An MRI of the lumbar spine dated June 19, 2009, revealed minimal facet changes at L4-5 and an otherwise unremarkable examination (Exhibit 5F, Page 4). X-rays of the claimant's cervical spine dated February 12, 2012, reveal mild degenerative disc changes (Exhibit 26F). A CT scan of the cervical spine dated February 28, 2012, revealed mild multilevel degenerative disc disease with spinal encroachment (Exhibit 27F).

Similarly, examination notes consistently note normal inspections of the claimant's back and extremities. For instance, Dr. Trott found no objective evidence of an impairment to the upper left extremity and no degree of impairment. He concluded that there is no medical justification for further work restrictions to the left upper extremity (Exhibit 2F). Likewise, treating physician Melinda Moretz, M.D., noted that the claimant's pain was muscular in origin as there was no evidence of nerve compression or disc abnormalities (Exhibit 5F, Page 3). Treatment notes indicate the claimant is obese but under no acute distress and walks with a normal gait. Upon examination she exhibited no muscle weakness in the left leg, contrary to her reports (Exhibit 5F, Page 2). On July 8, 2010, an examination of the claimant's back revealed mild tenderness to palpation, negative straight leg raising, and normal motor strength and sensation. An examination of the claimant's extremities revealed no significant traumatic injuries or tenderness and full ranges of motion (Exhibit 14F). On April 14, 2011, an examination of the claimant's spine was noted as non-tender and she exhibited normal range of motion in her extremities. No motor or sensory deficits noted (Exhibit 14F, Page 2).

I also note that treatment records note an improvement in the claimant's condition. For instance, on November 11, 2011, Dr. Beuchler noted that the claimant's fibromyalgia was doing quite well. He noted that her lumbosacral radiculopathy and stenosis have much improved. Her pain has decreased from 6 down to between 2 and 4 on a pain scale of 1 to 10. Her cervical radiculopathy is also much better (Exhibit 17F).

***

In reaching the above residual functional capacity assessment, I have also attributed significant weight to the State agency medical consultants. State agency examiner Frank Ferrell, M.D., performed a State agency residual functional capacity assessment of the claimant on September 1, 2010. And found the claimant to have the residual functional capacity to perform medium work and frequent bilateral reaching (Exhibit 9F). These findings were subsequently affirmed by Maya Desai, M.D., on November 24, 2010 (Exhibit 10F) and Maureen Polsby, M.D., on December 2, 2010 (Exhibit 12F). I find their opinions to be consistent with the weight of the medical evidence and the findings of consultative examiner Dr. Trott. However, I have chosen to further limit the claimant to sedentary work in light of the work restrictions noted in Occupational Medicine/Minor Care treatment records, which consistently limited the claimant to sedentary work. However, I note that on August 13, 2008, Ronald P. Januchowski, D.O. reviewed the claimant's medical records and noted that she has given conflicting stories. He concluded that the claimant should return to work and her multiple complaints may warrant an MMPI evaluation for somatization versus malingering (Exhibit 23F, Page 1). I have also limited the claimant to sedentary work in light of her treating physician's opinion that she could not perform more than light work (Exhibit 13F).

[R. 23–24.]

### Discussion

While Plaintiff recites the evidence of record attributed to Dr. Buechler and concludes that, if believed, it would support a finding of disability [Doc. 14 at 23], Plaintiff has failed to prove, as suggested, that the ALJ's reasoning was logically or legally insufficient. The ALJ explained his consideration of Dr. Buechler's opinion in light of Dr. Buechler's own treatment records, as well as the other medical evidence of record, and determined that there was no medical evidence of record that Plaintiff's impairments would require her to rest away from a workstation for more than an hour during the week and/or

23

miss more than three days of work in a month.  A review of Dr. Buechler's own treatment notes show that on examination on April 30, 2010, Plaintiff had 5/5 strength in her upper and lower extremities; sensation intact to all modalities including light touch, pinprick, vibration and proprioception; and symmetric and normal gait.  [R. 239.]  Nerve conduction studies, also dated April 30, 2010, showed normal results for the left upper and bilateral lower extremities with no evidence of left cervical radiculopathy.  [R. 240.]  Treatment notes from June 10, 2011, indicate normal 5/5 strength in the upper and lower extremities; DTR's 2/4 in the upper and lower extremities going down in to the toes; sensation intact to all modalities including light touch, pinprick, vibration and proprioception; and normal, symmetric gait.  [R. 293.]  Dr. Buechler noted Plaintiff showed 11/18 tender points.  [*Id.*] Dr. Buechler noted plaintiff was doing fairly well, changed her fibromyalgia medication, and noted her lumbrosacral radiculopathy and stenosis had been worsened by a recent car accident.  [*Id.*]  Prior treatment notes by Dr. Buechler had similar findings.  [*See* R. 294, 297–99.]  A subsequent examination in November 2011 notes much improved back pain, weight loss, improved trigger points (likely due to fibromyalgia) and cervical radiculopathy.  [R. 301.]  These treatment notes also show normal 5/5 strength in the upper and lower extremities; DTR's 2/4 in the upper and lower extremities going down into the toes; sensation intact to all modalities including light touch, pinprick, vibration and proprioception; normal, symmetric gait; and 11/18 trigger points requiring more pressure to elicit response. [*Id.*]

Further, the evidence of record includes a February 2012 CT of Plaintiff's spine, which indicates mild degenerative disc disease with shallow posterior right paracentral disc/spur complex appreciated at the C6-7 level; no compression fractures, linear fractures

24

or spondylolisthesis apparent; facet joints unremarkable without overt arthropathy; no osteopenia apparent; no destructive or erosive bone lesions; and no soft tissue masses or abnormal calcifications.  [R. 513.]  Although Plaintiff contends that the other evidence of record relied on by the ALJ did not provide the necessary support to "reject" Dr. Buechler's opinion, Plaintiff has failed to explain how the ALJ's consideration of this other evidence of record was in error.  It is the ALJ's duty to weight evidence, not the Court's.  *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court").  Further, the ALJ did not reject Dr. Buechler's opinion as Plaintiff contends, but the ALJ found Dr. Buechler's finding regarding Plaintiff's need to rest away from a workstation for more than an hour during the week and/or miss more than three days of work in a month was inconsistent with his own treatment notes.  The fact of this inconsistency is sufficient for the ALJ to give less weight to Dr. Buechler's opinion on this issue.

Plaintiff has failed to point to any evidence of record upon which the Court could determine that the ALJ's decision is not supported by substantial evidence.  The ALJ adequately explained his consideration of Dr. Buechler's opinion in light of the record evidence and explained his weighing of the same.  The ALJ also clearly took into account Plaintiff's complaint that she cannot sit or stand for long periods of time by limiting her to standing/walking with normal breaks for a total of two hours in an 8 hour work day and sitting, with normal breaks for a total of 6 hours.  [R. 22.]  Thus, in light of the above, the Court cannot find that the weight assigned to Dr. Buechler's opinion is a basis for remand.

**Special Technique**

Plaintiff contends that, despite the existence of depression, the ALJ failed to properly perform the psychological review technique form ("PRTF") analysis as required.[7] [Doc. 14 at 33.]  Plaintiff argues that the fact that Plaintiff was diagnosed with major depression triggered the ALJ's duty to perform the PRTF although medical evidence from Foothills Family Practice noted Plaintiff had no work-related limitation in function due to mental impairments.  [*Id.* at 33–34.]  The Commissioner contends, however, the ALJ did not have a duty to complete a PRTF where, considering the lack of medical evidence, he determined Plaintiff does not have a mental impairment.  [Doc. 15 at 24.]

As an initial matter, a physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms[.]"  20 C.F.R. § 416.908.  The Court notes that Plaintiff did not allege disability due to any mental conditions, including depression, in her DIB and SSI applications, and there is no opinion of a physician denoting disability based on a mental condition.  Further, Plaintiff failed to direct the Court to evidence of record presenting a colorable claim of mental impairment.  *See Sparrow v. Astrue*,  2010 WL 2910013 (E.D.N.C. June 28, 2010) ("Where the claimant has presented a colorable claim of mental impairment, . . . , the failure to incorporate the special technique into the ALJ's decision warrants remand for further proceedings."); *White v. Barnhart*, 321 F.Supp.3d 800, 804

---

[7]At Step 2 of the five-step evaluation process, the ALJ must follow a "special technique" to determine the severity of a claimant's mental impairments.  20 C.F.R. §§ 404.1520a(a), 416.920a(a).  Under the special technique, the ALJ first evaluates the claimant's pertinent symptoms, signs, and laboratory findings to determine if the claimant has a medically determinable mental impairment.  *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1).  Then the ALJ rates the claimant's degree of functional limitation resulting from the impairment.  *Id.* §§ 404.1520a(b)(2), 416.920a(b)(2).  The rating determines whether the claimant's impairment is severe or not severe.  *Id.* §§ 404.1520a(d), 416.920a(d).

(N.D.W. Va. 2004) (holding that because the record contains substantial evidence indicating the claimant suffered from anxiety and panic disorders with agoraphobia, the ALJ should have ordered a psychological examination and further developed the record with respect to the possibility of a mental impairment prior to rendering a decision). Thus, based on the above, the Court cannot find that the ALJ's duty to perform the special technique was triggered.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be AFFIRMED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

January 26, 2015
Greenville, South Carolina